J. F. HENDRIX, RESPONDENT, v. HENRIETTA B. GORE, JAMES GORE, AND PHILIP GRIGGSBY, APPELLANTS.

A MORTGAGE TO SECURE FUTURE ADVANCES IS VALID.—A note and mortgage given for a greater sum than is due by the mortgagor, to secure both a present indebtedness and future advances, is valid to secure the amount due at its date as well as future advances actually made in pursuance of a parol agreement entered into when it was given, although the mortgage does not set forth the real character of the transaction.

IDEM—PLEADING, WHAT ALLEGATION OF PAYMENT SUFFICIENT.—Where a defendant, in his answer, in a suit to foreclose a mortgage, alleged that he had fully paid it, he was entitled to prove on the trial that the plaintiff received money at different times, to be applied as payment on the mortgage, although he had not pleaded such payments as a counterclaim.

IDEM—PAYMENTS ON MORTGAGE NEED NOT BE PLEADED ON FORECLOSURE.—
A payment of money made on account of a mortgage, is not a cause of
suit, which must be pleaded by the defendant as a counter-claim to enti-
tle him to prove such payment in a suit to foreclose the mortgage.

APPEAL from Linn County.   The facts are stated in the
opinion.

*Humphrey & Hewitt, Bonham & Ramsey,* for appellants.

*E. N. Tandy, John Burnett, R. S. Strahan,* for respond-
ent.

By the Court, KELLY, C. J.:

In the early part of 1871, the appellants, who are husband
and wife, erected a building for a hotel on two lots owned
by the appellant, Henrietta B. Gore.   In building and fur-
nishing it they contracted debts with different persons,
which they were unable to pay.   Among these was one to
Driggs and Carter, for two hundred and sixty-one dollars,
for lumber and material used in the construction of the
house, and another to one Farrier, for about one hundred
dollars, for furniture put into it.   Needing more money to
furnish it, the appellants borrowed three hundred dollars
from the respondent about June 27, 1871, and on that day
gave their promissory note to him for one thousand dollars,
payable one year after date, and to secure its payment, on
the same day executed a mortgage on the lots and house
belonging to the wife.   It is admitted by the respondent,
that at the time appellants gave the note, they did not
owe him a greater amount than three hundred and ninety-
seven dollars and ninety-five cents, including the money
loaned by him.   But he alleges that the note and mortgage
were given to secure not only this debt, but also other sums
of money then owing by the appellants, and which the re-
spondent then assumed to pay, particularly the amounts
which they owed to Driggs and Carter, and to Farrier.
Respondent further alleges that at the time the note was
given, it was the understanding of the parties that whenever
the amount then due to respondent and all future advances,
and interest thereon at the rate of one per cent. a month,

should be fully paid, then the note was to be delivered to appellants, and the mortgage was to be satisfied.

On the other hand, it is contended by the appellants that the note and mortgage were given to secure the payment of the three hundred dollars then loaned by the respondent, and for the further purpose of keeping off their creditors until such time as they could pay them.   We think the evidence tends more strongly to support the position contended for by the respondent.   The fact that after two payments, amounting to two hundred and ninety dollars, had been made on the note, it was agreed by the parties that the rents due by Hendrix and Baker, on the lease executed on the twenty-sixth of January, 1876, for two years, were to be applied to the payment of the note and mortgage, as testified to by R. F. Baker, a disinterested witness, shows that the amount was for more than three hundred dollars. Moreover, it will not be presumed by the court that the note and mortgage were given for the unlawful purpose of delaying creditors of the appellants in collecting their demands.   We think, therefore, that the weight of testimony substantially establishes the fact that the note and mortgage were given by the appellants, not only to secure the payment of the demands then owing to the respondent, but also to secure future advances to be made by him to pay off certain debts then due by them to other creditors.

But the appellants contend that inasmuch as there is no reference in the mortgage to any future advances, to be made by the respondent, no payments made by him to such creditors can be tacked to or included in such mortgage, and in support of this position, we are referred to the cases of *Divver* v. *McLaughlin* (2 Wend. 596), and *Walker* v. *Snediker* (1 Hoffman Ch. 144).   The vice-chancellor, commenting on these decisions, in the case of *Craig* v. *Tappan* (2 Sandf. Ch. 596), says of the case in 2 Wend. 596, "that the absence of a statement in the mortgage that it was also to secure future advances, was commented upon by the chief justice with many other circumstances, but he does not say that this omission is of itself essential; and there were other abundant evidences of fraud in that case

upon which to base the decision." In the case cited from
1 Hoff. Ch. 144, the assistant vice-chancellor says: "But
the better opinion, if not the decided law, is, that the
mortgage must express the object. It is certain that it can
not be rendered available for future liabilities by a subse-
quent parol agreement." It will be perceived that he was
referring to a parol agreement for future advances, made
after, and not at the same time with the mortgage, as in the
case now under consideration. After the decisions which
have been referred to by the appellants' counsel were made,
the authorities were all reviewed by the vice-chancellor in
the case of *Craig* v. *Tappan*, 2 Sandf. Ch. 85, where he
held "that a mortgage intended to secure future advances,
need not express that object in the mortgage itself, but
when it is not stated the mortgage will be liable to suspi-
cion, and the holder put upon stricter proof of the payment
of the consideration; but its omission will not render the
security invalid." The same principle was afterwards de-
clared by the supreme court of Illinois, in *Collins* v. *Carlisle*,
13 Ill. 254, and still later by the supreme court of Califor-
nia in *Tully* v. *Harloe*, 35 Cal. 302.

The true principle to be deduced from all these cases
seems to be, that where a mortgage is given in good faith
to secure a present indebtedness and future advances,
whether the object be expressed in the mortgage or not, it
is valid to the extent of the lien therein expressly created.
It is always better, however, that the mortgage should be
drawn so as to show the true object and purpose of the
transaction, for suspicion is engendered by misrepresenta-
tion, but disarmed by a statement of the truth. (*Shirras*
v. *Caig*, 7 Cranch, 34.) The appellants must therefore be
held liable on the note and mortgage, for the amount which
they actually owed to the respondent when the mortgage
was given, and also for the amount paid by him to Driggs
and Carter; and such other small sums as he agreed to and
actually did pay for the appellants, together with interest
thereon since the time of payment. The rate of interest
which was to be paid on these several sums is a matter of
dispute between the parties, and as it is not specified in the

note or mortgage, only the legal rate of interest will be allowed.

The respondent claims a credit for one hundred and twelve dollars and eighty-two cents, being a debt due by appellants to Wm. Farrier, which respondent assumed to pay. It appears that the promise to pay was not in writing, and an agreement to answer for the debt, default, or miscarriage of another, unless in writing, is void. It would, moreover, be unjust to allow him credit for an amount which he promised to pay, but which promise he failed to fulfill, and that, too, while James Gore is still liable for the same debt. This claim will be disallowed, except the small sums paid thereon by the respondent. So, also, the claim of seventy-five dollars, balance due on the wagon and harness, will be disallowed, because it does not appear that it was a debt secured by the mortgage. The appellants in their answer deny that there is anything due on the mortgage, and allege that it has been fully paid. They now claim, that in addition to the two payments of two hundred and forty dollars and fifty dollars, admitted by the respondent, they should also be allowed a credit for the rents due on a certain lease of the mortgaged premises to Hendrix and Baker, made on the twenty-sixth day of January, 1876. It appears from the evidence of R. F. Baker, one of the lessees, that it was the agreement and understanding of the parties to the lease that the rents, as they became due, at the end of each month, were to be applied to the payment and discharge of the mortgage debt, and that he paid his share of the rent to the respondent accordingly. But it is objected by the respondent that the amount due for rent on the lease should not be considered or allowed, because it is not between the same parties, and there is no counter claim pleaded in either answer. We think the appellants are entitled to a credit for the rents paid by Hendrix and Baker, the lessees to the respondent, and which he received according to the understanding and agreement of the parties to the lease, to be applied as payments on the mortgage debt. That it was agreed that the rents should be so applied, is clearly proven by R. F. Baker, and is not denied by the respondent. And the objection

that these monthly rents so received by the respondent from the lessees should not be allowed as credits in favor of the appellants because they have not been pleaded as a counter claim, is untenable. A payment made on a note or other evidence of indebtedness is not a cause of action or of suit which may be pleaded as a counter claim. It is rather the extinguishment of a cause of action or suit by the adverse party, to the extent of the payment so made; and evidence of such payment may be offered on the trial under the general allegation, that the demand of such adverse party has been paid. We therefore hold that the appellants are entitled to a credit for the rents of the mortgaged premises under the lease of the twenty-sixth of January, 1876, "less the cost of the improvements made thereon which were a permanent part of the house, and actually necessary for the convenience, profit, and protection of the premises," as specified in the lease. The rents received by the respondent from the twenty-first of February, 1876, to the twenty-first of February, 1878, amounted to six hundred dollars, from which should be deducted two hundred and twenty-nine dollars and fifty-six cents for permanent improvements on the mortgaged premises; one hundred and eleven dollars and fifty cents for insurance paid by the lessees, and thirty-three dollars for rent paid to appellant, James Gore; in all, three hundred and seventy-four dollars and sixteen cents, leaving two hundred and twenty-five dollars and ninty-four cents, and interest thereon to be applied in part payment of the mortgage.

A statement of the accounts between the parties in accordance with the views herein expressed, is annexed to this opinion, by which it appears that there is now due upon the mortgage the sum of four hundred and eighty-nine dollars and twenty-four cents, and a decree will be entered accordingly for that sum.

[The statement of accounts referred to in the opinion is not necessary to an understanding of the points decided. It is therefore omitted.—REPORTER.]